Gen. 359]                                                                                         359

**TOBACCO REGULATION**

COUNTIES – PREEMPTION – CONSTITUTIONAL LAW – FREEDOM
    OF SPEECH – COMMERCIAL SPEECH – COUNTY AUTHORITY
    TO RESTRICT CIGARETTE VENDING MACHINES, CIGARETTE
    BILLBOARD ADVERTISING AND SMOKING IN PUBLIC PLACES

October 7, 1993

*The Honorable Timothy F. Maloney*
*House of Delegates*

You have requested our opinion whether the Prince George's County Council may lawfully enact legislation governing tobacco matters. Specifically, you ask whether the Council has authority to enact legislation that:

1.     limits or prohibits use of vending machines for the sale of tobacco products;

2.     limits or prohibits billboard advertising of tobacco products; or

3.     restricts smoking in public places.

For the reasons stated below, we conclude as follows:

1.     The Prince George's County Council may not limit or prohibit the use of vending machines for the sale of tobacco products.

2.     Because of preemption provisions in federal law governing cigarette advertising, county legislation to restrict billboard advertising of cigarettes may not be based on concerns about the public health consequences of smoking. An alternative legislative basis, however, such as concerns about smoking by minors, would take the restriction outside the scope of federal

preemption.     The Council may restrict or prohibit billboard advertising of tobacco products other than cigarettes.

3.     The Council may generally restrict smoking in public places.

# I

## Introduction

Prince George's County has adopted a charter form of government under Article XI-A of the Constitution.  The Express Powers Act grants charter counties a number of specific powers over local affairs.  *See* Article 25A, §5 of the Maryland Code.  More generally, such counties have broad police power authority "to pass all ordinances, resolutions or bylaws, not inconsistent with the provisions of this article or the laws of the State, ... as well as such ordinances as may be deemed expedient in maintaining the peace, good government, health and welfare of the county."  §5(S).

Given the exhaustively documented harms caused by smoking, charter county legislation aimed at preventing or discouraging smoking would undoubtedly further the "health and welfare of the county."  Therefore, in the exercise of its police power, Prince George's County could enact any of the three kinds of legislation to which you refer – limitations on cigarette vending machines, limitations on billboard advertising of tobacco products,[1] or limitations on smoking in public – *unless* the legislation were:  (i) in conflict with, or preempted by, State law; (ii) in conflict with, or preempted by, federal law, and therefore unconstitutional under the Supremacy Clauses of the United States and Maryland Constitutions; or (iii) unconstitutional for other reasons.  We shall examine each of these potential barriers to the types of legislation in question.

---

[1] The regulation of billboards might also fall under the zoning power granted to Prince George's County by the Regional District Act.  *See* Article 28, §8-101(b)(1) of the Code.

## II

### Restrictions on Cigarette Vending Machines

The police power grant in the Express Powers Act, Article 25A, §5(S), contains a proviso "that the powers herein granted shall only be exercised to the extent that the same are not provided for by public general law ...."  A county ordinance may neither conflict with a public general law nor legislate in a field preempted, either explicitly or impliedly, by public general law.  *See, e.g., Ad + Soil, Inc. v. County Comm'rs,* 307 Md. 307, 513 A.2d 893 (1986); *Rosecroft Trotting and Pacing Ass'n v. Prince George's County*, 298 Md. 580, 471 A.2d 719 (1984); *Steimel v. Board of Election Supervisors,* 278 Md. 1, 357 A.2d 386 (1976); *County Council v. Montgomery Ass'n*, 274 Md. 52, 333 A.2d 596 (1975).

In a very recent decision, the Court of Appeals held that, through enactment of a licensing scheme for cigarette vending machines in public general law, "the General Assembly has manifested an intent for the State to completely occupy the field of the sale of cigarettes through vending machines rendering any local or municipal ordinances in this area constitutionally invalid." *Allied Vending, Inc. v. City of Bowie*, 332 Md. 279, 310 (1993).  This holding answers your question whether Prince George's County may limit or prohibit the use of vending machines for the sale of tobacco products – it may not.[2]

The Court of Appeals was quite careful in its description of the scope of State preemption, however.  The Court viewed the licensing scheme as "'an all-encompassing State scheme' ... to regulate the sale of cigarettes through cigarette vending machines." *Allied Vending* at 301 (citation omitted).  The Court's discussion of other considerations supporting its conclusion, including the General Assembly's failure to enact legislation prohibiting or restricting cigarette vending machines, was linked to the preexisting, detailed statutory licensing scheme and its preemptive effect on "any local or

---

[2] To be sure, the *Allied Vending* case involved municipal restrictions enacted pursuant to Article XI-E of the Constitution and Article 23A, §2 of the Maryland Code.  Nevertheless, the Court's preemption analysis would be the same, if the local enactment were by a charter home rule county.

municipal legislation in the field of the sale of cigarettes through cigarette vending machines ...." *Allied Vending* at 306. In short, *Allied Vending* itself neither holds nor suggests that any other kind of tobacco-related local enactment is preempted by State law. *See* Part IVA below.

Because the State preemption issue is dispositive as to local regulation of cigarette vending machines, we need not address any issue under federal law.

## III

### Restrictions On Billboard Advertising of Tobacco Products

#### A.     *State Preemption*

Title 8, Subtitle 7 of the Transportation Article ("TR" Article) contains a detailed licensing and regulatory scheme for outdoor advertising. But TR §8-702(a) negates any implication that this scheme preempts the field: "The provisions of the subtitle are in addition to any other provisions of law that regulate or govern signs along highways or on public property." *See also* TR §8-736 (preservation of local zoning authority).

#### B.     *Federal Preemption - Cigarette Advertising*

The Federal Cigarette Labeling and Advertising Act, as amended by the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. §§1331 through 1340, governs federal preemption of cigarette advertising. The 1965 Act required health warnings on cigarette packages (but not on cigarette advertising) and contained the following preemption clause: "No statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." Pub. L. No. 89-92, 79 Stat. 282-283, §5(b).

The 1969 amendments strengthened the warnings, banned cigarette advertising in electronic communications, and modified the preemption provision.[3]  Pub. L. No. 91-22, 84 Stat. 87.  The preemption clause, §5(b) of the Act, now reads as follows:  "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act."  15 U.S.C. 1334(b).[4]

The Supreme Court's decision in *Cipollone v. Liggett Group, Inc*., 505 U.S. 504 (1992), addresses the scope of the preemption provision.  In *Cipollone*, the issue arose as a result of a state court common law damages actions against cigarette manufacturers brought on behalf of a lung cancer patient.  The Court discussed whether the federal law preempted a number of state common law damage actions including, for example, a claim that the warnings in cigarette advertising were inadequate.

In discussing the law, the four-justice plurality compared the preemption provision of the original Federal Cigarette Labeling and Advertising Act of 1965 with the preemption provisions after the 1969 amendments.  The plurality held that the preemption clause in the 1965 Act had preempted only "positive enactments by legislatures or administrative agencies that mandate particular warning labels."  112 S.Ct. at 2618-19.  The plurality rejected arguments that the 1969 preemption language should be read as narrowly as the 1965 language.  It emphasized that "the pre-emption provision in the 1969 Act is much broader ... and bars not simply

---

[3] In 1972 the Federal Trade Commission entered consent orders with the major cigarette manufacturers that extended the warning requirements to cigarette print advertisements.  Finally, in the Comprehensive Smoking Education Act of 1984, Pub. L. No. 98-474, 98 Stat. 2200, Congress itself extended warning requirements to cigarette advertisements, including billboards.  *See* 15 U.S.C. §1333(a)(2) and (3).

[4] Because the statute defines "State" to include political subdivisions of a state, county legislation is covered by the preemption provision as well. Section 2 of the Act, 15 U.S.C. § 1332(3).  "This preemption is intended to include not only action by State statute but by all other administrative actions or local ordinances or regulations by any political subdivision of any State."  S. Rep. No. 91-566, 91st Cong., 2d Sess. 12 (1969), *reprinted in* 1970 U.S. Code Cong. & Admin. News 2652, 2663.

'statements' but rather 'requirement[s] or prohibition[s] ...'" with respect to the advertising or promotion of cigarettes. 112 S.Ct. at 2619. In fact, even the three justices dissenting to this part of the opinion, who viewed the 1969 revisions to §5(b) as "generally nonsubstantive in nature," suggested that the word "prohibition" was added in the 1969 amendments to the preemption provision "to ensure that a State could not do through negative mandate (*e.g.*, banning all cigarette advertising) that which it already was forbidden to do through positive mandate ...." 112 S.Ct. at 2629 (per Blackmun, J.).

It has been argued that §5(b), interpreted in light of the purpose clauses of the Act, extends only to state regulation of advertising content and should not be read to extend to state restrictions on advertising in certain media or locations. Section 2 declares that the Act's purposes include protecting commerce and the national economy from "diverse, nonuniform, and confusing cigarette labeling and advertising regulations ...." The argument for narrowly construing the scope of §5(b) preemption is that because restrictions on advertising locations do not produce diverse, nonuniform, or confusing regulations, these restrictions should not be governed by §5(b).

The *Cipollone* decision, however, effectively forecloses any reading of §5(b) other than a literal one:

> In our opinion, the preemptive scope of the 1965 Act and the 1969 Act is governed entirely by the express language in §5 of each Act. When Congress has considered the issue of preemption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a "reliable indicium of congressional intent with respect to state authority, ... there is no need to infer congressional intent to preempt state laws from the substantive provisions" of the legislation.... [T]he other provisions of the 1965 and 1969 Acts offer no cause to look beyond §5 of each Act.

112 S.Ct. at 2618 (citations omitted). As a federal district court recently concluded in finding that §5(b) preempted a local effort to require a set ratio of anti-smoking ads to cigarette ads on taxicab and other displays: "In the realm of cigarette advertising, Congress now regulates the balance between the need to warn the public of known health risks and the interests of the tobacco industry in advertising cigarettes." *Vango Media, Inc. v. City of New York*, 829 F.Supp. 572, 582 (S.D.N.Y. 1993).[5]

To summarize, Congress accepted the premise, disputed by the tobacco industry but backed by overwhelming scientific evidence, that smoking exacts a terrible toll on health. Acting on that premise, Congress enacted certain disclosure requirements intended to warn the public about the health consequences of smoking. At the same time, in an obvious concession to the tobacco industry, Congress reserved to the federal government alone the prerogative to decide whether any other advertising restrictions were necessary or desirable. Thus, state and local governments may not restrict billboard advertising of cigarettes if a restriction is based on the policy premise that smoking causes health problems and therefore should be discouraged.

Conversely, a state or local government may restrict billboard advertising of cigarettes if the restriction is based on a policy premise *other than* "smoking and health" concerns. "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." *Cipollone*, 112 S.Ct. at 2618. *Cf. Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Develop. Comm'n*, 461 U.S. 190, 213 (1983) (preemption clause barring state regulation of nuclear power plants for safety-related reasons permits regulation based on "a nonsafety rationale").

---

[5] In a prior letter of advice, this office reached a similar conclusion. Letter from Assistant Attorney General Kathryn M. Rowe to Senator Idamae Garrott (Feb. 6, 1991). Federal preemption does not extend to State or local decisions about cigarette advertising on government property, however. *See* letter of advice from Assistant Attorney General Robert A. Zarnoch to Delegate Martin G. Madden (Jan. 30, 1991).

One potential alternative public policy basis for limiting cigarette advertising is deterrence of an illegal activity – namely, the sale of cigarettes to minors, which is prohibited by Article 27, §404 of the Maryland Code. Currently, some organizations in Baltimore City are advocating restrictions on the location of cigarette billboard advertising, apparently to reduce the promotion of cigarette use by minors. According to press reports, the groups argue that billboard advertising of cigarettes in residential areas should be restricted, because this advertising specifically appeals to children, heightens their demand for cigarettes, and so encourages illegal sales to them.[6]

This rationale would survive preemption only if it can be distinguished from a prohibited public health purpose. The question, then, is whether restrictions on advertising due to their purportedly disproportionate appeal to an "illegal" segment of the market constitutes a distinguishable rationale under §5(b) of the Act.[7]

Opponents of restrictive legislation are likely to argue that such a rationale is merely a surrogate for health concerns – that public policy prohibitions of sales to minors are based on health considerations. For example, a New York City ordinance regulating cigarette billboards based on the supposed "economic" effects of smoking was found to be preempted because "it is impossible to abstract Defendants' economic rationale from the [New York law's] fundamental nature as a regulation based on smoking and health." *Vango Media v. City of New York*, 829 F.Supp. at 582.

---

[6] As with legislation generally, the legitimacy of billboard restrictions would depend in part on the reasonableness of the rationale. Restrictions based on deterring sales to minors would obviously be strengthened to the extent that the legislative record contained support for the restrictions by, for instance, including findings that the advertising being restricted differentially impacted on minors.

[7] We view a rationale based on the disproportionate appeal to minors of billboards as a discrete and distinct form of advertising, or the disproportionate impact on minors of certain billboard locations, as more likely to escape §5(b) preemption than a policy to restrict billboards based merely on the appeal of the advertising message to minors. A rationale that does not focus on specific characteristics of billboard advertising would as well justify banning other forms of cigarette advertising. But such a rationale is more likely to be viewed as a subterfuge and reflects a position already rejected in dicta by three justices in *Cipollone.* 112 S.Ct. at 2629.

In our view, however, there are strong grounds to believe that billboard restrictions based on deterring sales to minors are not preempted.  A government effort to restrict smoking by minors can legitimately be said to be based on the policy premise – accepted by the tobacco industry – that minors lack the mature judgment necessary to weigh the issues of smoking and health.  As a publication co-sponsored by the Tobacco Institute states:

> Young people are aware of the claims that smoking presents risks to one's health ....  However, young people are not experienced enough to use the information available to formulate their own decisions.  That's why decisions regarding smoking and other adult activities, such as drinking and sexual activities, should be made as an adult.

*Tobacco: Helping Youth to Say No* at 9 (1991).

When a state or local government seeks to restrict cigarette advertising targeted at a general audience, it hopes to dampen demand for products that it believes are unhealthy – and, because of §5(b), only the federal government can take that action.  But when a state or local government restricts cigarette advertising that disproportionately affects minors, it acts for a different reason:  to dampen demand among a group that cannot adequately assess the consequences of smoking.  It also acts to discourage efforts by minors to solicit an illegal transaction.  In the same publication quoted above, the Tobacco Institute characterizes the illegality of sales to minors as a separate reason, apart from health considerations, for discouraging minors from smoking.[8]

The *Cipollone* opinion emphasized that "Congress intended the phrase 'relating to smoking and health' ... to be construed narrowly ...." 112 S.Ct. at 2624.[9]  Moreover, the Court approvingly quoted

---

[8] Indeed, the prohibition in Article 27, §404 has been on the books since 1886, long before the health harms of smoking were scientifically documented.

[9] In this passage, the Court specifically referred to a congressional intent "not to proscribe the regulation of deceptive advertising." *Id*. The context of this discussion, however, especially the accompanying footnote,

(continued...)

legislative history "'emphasiz[ing] that the preemption of regulation or prohibition with respect to cigarette advertising is *narrowly phrased to preempt only State action based on smoking and health.* It would in no way affect the power of any State ... with respect to the taxation or the sale of cigarettes to minors ....'" 112 S.Ct. at 2624 n.26 (emphasis in original, citation omitted). Thus, because the Court not only viewed "health" considerations narrowly but also identified deterring sales to minors as a separate goal of State police powers, we conclude that advertising restrictions intended to further this goal are distinguishable from health concerns under §5(b).

Moreover, the framing of the preemption test in *Cipollone* strengthens our conclusion. In *Cipollone,* the plurality stated:

> The central inquiry in each case is straightforward: we ask whether the legal duty that is the predicate of the common law damages action constitutes a "requirement or prohibition based on smoking and health ... imposed under State law with respect to ... advertising or promotion," giving that clause a fair but narrow reading.

112 S.Ct. at 2621. Applying this test, the plurality found that certain common law theories were preempted, but others were not. For example, a claim based on fraudulent misrepresentation was not preempted, because "[s]uch claims are not predicated on a duty 'based on smoking and health' but rather on a more general obligation – the duty not to deceive." 112 S.Ct. at 2624.

In *Mangini v. R.J. Reynolds Tobacco Co.*, 21 Cal. Rptr. 2d 232 (Cal. App. 1993), the California Court of Appeals, following the reasoning of *Cipollone*, addressed the question whether a cause of action to restrict certain advertising of Camel cigarettes, based on its alleged targeting of minors "for the purpose of inducing and increasing their illegal purchases of cigarettes," was preempted. The California court first found a legal duty not to target minors in cigarette advertising. Under California law, targeting minors is an

---

[9] (...continued)
makes clear the Court's view that the narrow construction of §5(b) was not limited to this one instance of state authority.

unfair business practice because, according to the court, it offends public policy as established by the statute prohibiting sales to minors, exploits minors who do not have the maturity to make such decisions, and harms children by luring them into addiction. 21 Cal. Rptr. 2d at 241. The court then found that: "Mangini's 'targeting of minors' theory of unfair advertising is not 'based on smoking and health' but on the more general duty not to engage in advertising that is against public policy, oppressive and unscrupulous, and harmful to consumers." 21 Cal. Rptr. 2d at 243. Because the cause of action was premised on public policies distinct from health concerns, as was true of some of the claims in *Cipollone*, §5(b) preemption did not apply.

The court's logic – that common law-based advertising restrictions to prevent targeting minors are not based on health – would be applicable to legislative restrictions on billboards that disproportionately affect minors. Cigarette advertising in locations that particularly impact minors also undermines public policy and exploits minors. We view the courts as likely to find, as did the California court, that where advertising restrictions further a public policy separately established by statute, as in the case of illegal sales to minors, §5(b) preemption is inapplicable. *Cf. Pacific Gas & Elec. Co. v. State Energy Resources Conserv. & Develop. Comm'n*, 461 U.S. at 216 (deference owed to state assertion of regulatory purpose that is outside zone of federal preemption).

## C. *Federal Preemption – Advertising of Smokeless and other Tobacco Products*

While Congress has also enacted a preemption provision governing advertising of smokeless tobacco products, §7 of the Smokeless Tobacco Education Act, P.L. 99-252, its scope is far narrower than that governing cigarette advertising:

> No statement relating to the use of smokeless tobacco products and health, other than the statements required by section 3, shall be required by any State or local statute or regulation to be included on any package or in any advertisement (unless the advertisement is an outdoor billboard advertisement) of a smokeless tobacco product.

15 U.S.C. §4406(b).  Thus, this law on its face only preempts some additional warning requirements for smokeless tobacco products, not prohibitions on advertising.  Furthermore, to our knowledge, Congress has not enacted legislation intended to preempt local regulation of advertising of other tobacco products.

## D.    Constitutional Issues

The First Amendment, applicable to the States through the Fourteenth Amendment, limits regulation of "commercial speech."[10] In *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n*, 447 U.S. 557 (1980), the Supreme Court established a four-part test for determining whether a regulation of commercial speech violates the First Amendment.  As a threshold matter, the First Amendment only protects commercial speech that concerns lawful activities and that is not misleading.  Second, any restrictions of commercial speech must be based on a substantial governmental interest.  Third, the restriction must advance the governmental interest. And fourth, the restriction may not be more restrictive than necessary to serve that interest.  447 U.S. at 566.  In a subsequent case, *Board of Trustees v. Fox*, 492 U.S. 469, 480 (1989), the Supreme Court revised the fourth condition, requiring only that the restriction reflect "a means narrowly tailored to achieve the desired objective."

We begin with the premise that First Amendment protections would be applicable to tobacco product advertising.  Tobacco products are lawful, and tobacco advertising is not necessarily misleading.

The remaining three tests address whether the protection of commercial speech is outweighed by governmental interests. Restrictions will be upheld if there is a substantial governmental interest that the restrictions directly advance by a means narrowly tailored to achieve that interest.

---

[10] Article 40 of the Maryland Declaration of Rights has been interpreted to provide the same protection of speech as under the First Amendment. *Freedman v. State*, 233 Md. 498, 197 A.2d 232 (1964), *rev'd on other grounds*, 380 U.S. 51 (1965).

Although a public health basis for regulating billboard advertising of cigarettes would surely be substantial, we have explained above why that justification is impermissible under federal law. Accordingly, we focus on the alternative governmental interest in protecting minors from premature decisions to smoke and from participation in illegal sales of cigarettes. Where, as in Maryland, the state has a public policy established by statute in protecting minors from cigarettes, the requisite substantial governmental interest exists.[11]

The next question is whether billboard restrictions directly advance the governmental interest in protecting minors. The Supreme Court and a number of lower federal courts have accepted in several contexts the common-sense proposition that reduced advertising leads to reduced consumption, without requiring independent evidence. *See, e.g., Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico*, 478 U.S. 328 (1968) (casino advertising); *Oklahoma Telecasters Assn. v. Crisp*, 699 F.2d 490 (10th Cir. 1983), *rev'd on other grounds sub nom. Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691 (1984) (alcohol advertising); *Dunagin v. City of Oxford*, 718 F.2d 738 (5th Cir. 1983), *cert. denied*, 467 U.S. 1259 (1984) (alcohol advertising). If the connection is not self-evident, however, the courts may require a demonstration of the relationship. *See Adolph Coors Co. v. Brady,* 944 F.2d, 1543, 1550 (10th Cir. 1991). While we cannot predict what evidence might be available, we view as likely, in light of the above cases, that a court would view the connection between billboards' having a special effect of minors and minors' demand for cigarettes as self-evident. *See State v. Packer Corp.*, 297 P. 1013, 1017 (Utah 1931), *aff'd*, 285 U.S. 105 (1932) ("The prohibiting of

---

[11] In *Dunagin v. City of Oxford,* 718 F.2d 738 (5th Cir. 1983), *cert. denied*, 467 U.S. 1259 (1984), the Fifth Circuit upheld the constitutionality of a liquor advertising ban relying on the general welfare of the state's citizens but declined to uphold the ban based on the state's asserted interest in preventing illegal use of alcohol. In our view, however, courts are unlikely to adopt a line of reasoning that states cannot constitutionally restrict advertising to protect a segment of the population, particularly if the segment to be protected comprises minors. As the Supreme Court has emphasized, "The State has ... an independent interest in the well-being of its youth." *Ginsberg v. State of New York,* 390 U.S. 629, 640 (1968).

billboard ... advertising has a direct bearing ... in attempting to prevent the sale to and use of cigarettes and tobacco by minors.").

The final issue is whether the restrictions would be "narrowly tailored to achieve the desired objective." Here, billboard restrictions would presumably be based on the particular impact on minors of billboard advertising, at least in certain locations, and the lack of parental control over such advertising. Clearly many other advertising venues for cigarette would remain unaffected. Under these circumstances, the courts would likely defer to legislative judgment on the appropriate fit between the restrictions and the objectives.

The fact that any ban on billboard advertising of cigarettes would not affect other print advertising would enhance the position that a ban was narrowly focused on particular kinds of advertising resulting in disproportionate harm in terms of public policy. Further tailoring, such as allowing billboard advertising of cigarettes in non-residential areas, would strengthen the analysis under this prong of *Central Hudson*. Such geographical tailoring might also afford to the local enactment the protection of the Supreme Court's "time, place, and manner" doctrine. *See, e.g., City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986).

## IV

### Restrictions on Smoking

#### A.    *State Preemption*

With respect to restrictions on smoking, the General Assembly has not enacted a single, comprehensive scheme of regulation. Rather, it has enacted a disparate group of statutes that restrict or prohibit smoking in specific places, generally confined spaces or places where smoking might cause particular health or safety risks. Thus, for example, a provision enacted in 1975 prohibits smoking on intrastate buses. Article 78, §35A. In the same year, the General Assembly passed a law prohibiting smoking on public elevators. Article 89, §64. An even older provision, now codified in TR §7-705(b)(2), prohibits smoking on mass transit vehicles or trains. For obvious fire safety reasons, the General Assembly has long banned

smoking in fireworks plants.  Article 38A, §23(b).  In 1989, the General Assembly generally prohibited smoking in hospitals.  §24-205(c)(1) of the Health-General Article, Maryland Code ("HG" Article).[12]

The only aspect of State law that addresses smoking in a sizeable category of public places is HG Title 24, Subtitle 5, enacted in 1988, which generally prohibits smoking "in a public area of a retail store in this State."  HG §24-502(b).  Yet even this subtitle does not purport to regulate smoking in public places generally.  Furthermore, this subtitle expressly allows all but two counties to enact a local law "that is more stringent than the provisions of this subtitle."  HG §24-505(a).

This record of episodic legislative attention to the problem of smoking in particular places does not "manifest the general legislative purpose to create an all-encompassing State scheme ...." *Talbot County v. Skipper*, 329 Md. 481, 491, 620 A.2d 880 (1993).  As the Court of Appeals stated in *Mayor and City Council v. Sitnick*, 254 Md. 303, 317, 255 A.2d 376 (1969), "unless a general public law contains an express denial of the right to act by local authority, the State's prohibition of certain activity in a field does not impliedly guarantee that all other activity shall be free from local regulation and in such a situation the same field may thus be opened to supplemental local regulation."

The Legislature has simply not addressed the question of smoking in the host of public places not encompassed by any of these enactments.  We discern no evidence of a legislative intent to preclude local governments with home rule power from exercising that authority as to the unaddressed problem of smoking in public places generally.  *See Boreali v. Axelrod,* 518 N.Y.S.2d 440, 442 (N.Y. App. Div. 1987).[13]

---

[12] An earlier law, now codified at HG §24-205(b), requires other health care facilities to regulate smoking on the premises in order to "protec[t] the health of nonsmoking patients ...."  HG §24-205(d) sets out circumstances under which smoking is permitted in certain health care facilities.

[13] This case involved the validity of an agency regulation restricting

(continued...)

In summary, we believe that State law allows Prince George's County and other home rule jurisdictions to enact legislation restricting smoking in public places, so long as a local enactment does not conflict with a State law (by, for example, purporting to allow smoking when State law has prohibited it in a particular place) and, in the case of local legislation restricting smoking in retail stores, so long as the local enactment is "more stringent" than the State law.

### B.    Federal Preemption

Federal law does not preempt local restrictions on smoking in public places. The federal statute discussed above, the Federal Cigarette Labeling and Advertising Act, does not address restrictions on smoking. In fact, the legislative history expressly confirms the maintenance of state authority in this regard: "The State preemption of regulation or prohibition with respect to cigarette advertising ... would in no way affect the power of any State or political subdivision of any State with respect to ... the prohibition of smoking in public buildings, or similar police regulations." S. Rep. No. 91-566, 91st Cong., 2d Sess. 12 (1969), *reprinted in* 1970 U.S. Code Cong. & Admin. News 2652, 2663.

### C.    Constitutional Issues

In our view, restrictions on smoking would generally be upheld against challenges under the Equal Protection or Due Process Clauses of the Fourteenth Amendment. Smoking ordinances enacted to protect the public health are based on the police powers of the State and the local governments. *See Welch v. Coglan* 126 Md. 1, 94 A. 384 (1915) (preservation of public health is a primary function

---

[13] (...continued)
smoking in public places. Although the New York appellate court struck down the regulation on the ground that it exceeded the agency's authority, the court rejected the argument that a state statute banning smoking in libraries, museums, and theatres had impliedly preempted the field. This legislation, the court wrote, "is of limited scope and purpose, and certainly not a comprehensive scheme to regulate public smoking." 518 N.Y.S.2d at 442. The court also commented that "the Legislature's rejection of numerous attempts to expand this legislation ... is inherently dubious and does not warrant the inference that [the state law] represents a definitive State policy on the regulation of public smoking ...." *Id.*

of police powers). In the exercise of police powers, local governments may impose such burdens as are reasonably necessary and proper to ensure the general health and safety of the public. *Edgewood Nursing Home v. Maxwell*, 282 Md. 422, 384 A.2d 748 (1978). Straightforward limitations on smoking in public places, primarily designed to protect nonsmokers, meet this minimal test. *See* 72 *Opinions of the Attorney General* 230, 236 n.6 (1987). *Accord, Fegan v. Axelrod*, 550 N.Y.S.2d 552, 558-61 (N.Y. Sup. Ct. 1990); *Rossie v. State/Dep't of Revenue*, 133 Wis. 2d 341, 395 N.W. 2d 801, 806-07 (1986).[14]

Local restrictions have been upheld even when far more burdensome than a ban on smoking in public places. In *Grusendorf v. City of Oklahoma City*, 816 F.2d 539 (10th Cir. 1987), a firefighter challenged a city rule that required as a condition of employment that a firefighter refrain from smoking on *and* off the job as violating his liberty rights under the Fourteenth Amendment. The court applied a low threshold for constitutional review, upholding the requirement on the grounds that there was a rational connection between not smoking and the required physical fitness for the job. Because public health ordinances, such as a ban on smoking in public places, are sustained when justified by a rational basis, we see no Fourteenth Amendment impediment to such county restrictions.

# V

## Conclusion

In summary, it is our opinion that Prince George's County Council may enact legislation that limits or prohibits billboard advertising of tobacco products other than cigarettes. It may limit

---

[14] "There is no longer any doubt that exposure to environmental tobacco smoke ... is a cause of death and disease among nonsmokers." National Institutes of Health, *Major Local Tobacco Control Ordinances in the United States* 5 (1993). Local restrictions on smoking in public places are apparently fairly commonplace. As of 1989, "400 cities and counties [had] passed ordinances restricting or banning smoking in public places, covering a population of over 52 million or slightly more than 20% of the total U.S. population." D.R. Shopland *et al*., *Toward a Tobacco-Free Society*, 17 *Seminars in Oncology* at 410 (1990).

billboard advertising of cigarettes if its limitation is based on a rationale other than public health. The County may also restrict smoking in public places. The County may not regulate cigarette vending machines in any way.


                                        J. Joseph Curran, Jr.
                                        *Attorney General*

                                        Jack Schwartz
                                        *Chief Counsel*
                                        *Opinions & Advice*

                                        D. Michal Freedman
                                        *Assistant Attorney General*


**Editor's Note:**

        Since the issuance of this opinion, the Department of Labor, Licensing and Regulation has adopted regulations prohibiting smoking in enclosed workplaces. COMAR 09.12.23.